## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| EDWARD NELSON,<br>REG. # 31408-007, | ) ) ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. CIV-20-562-F |
| GARY PETRY, *et al.,* | ) ) ) | |
| Defendants. | ) | |

---

## INDIVIDUAL DEFENDANTS' MOTION TO DISMISS
## WITH BRIEF IN SUPPORT

---

ROBERT J. TROESTER
Acting United States Attorney

*/s/ Rebecca A. Frazier*
REBECCA A. FRAZIER
Assistant U.S. Attorney
Okla. Bar Number: 22285
United States Attorney's Office
210 Park Avenue, Suite 400
Oklahoma City, OK 73102
(405) 553-8804/8700 - (fax) 553-8885
Rebecca.Frazier@usdoj.gov

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................... iii-ix

INTRODUCTION ...................................................................................... 1

STANDARD OF REVIEW ......................................................................... 3

Fed. R. Civ. P. 12(b)(2) & (b)(5) ............................................................. 3

Fed. R. Civ. P. 12(b)(6) ........................................................................... 5

ARGUMENT AND AUTHORITY ............................................................. 6

I.     Plaintiff Has Not Effected Proper Service, So the Court Lacks Personal
       Jurisdiction .................................................................................. 6

II.    Defendant Stenmark, As An Employee of the United States Public Health
       Service, Is Entitled to Absolute Immunity ...................................... 9

III.   Plaintiff's Individual Capacity Claim Against Dr. Petry Should be Dismissed
       Pursuant to Rule 12(b)(6) ............................................................. 10

       A.  Individual Capacity Claims Against Federal Actors Are Rare .............. 10

       B.  Plaintiff Fails to State a Plausible Eighth Amendment Violation ......... 12

           i.    Legal Precedent Related to Deliberate Indifference ................... 12

           ii.   Plaintiff Fails to Allege Sufficient Facts Establishing Dr. Petry's
                 Personal Involvement in Count II ................................................ 14

           iii.  Counts I and II Fail to Rise to the Level of Deliberate
                 Indifference ................................................................................ 15

       C.  Even if Plaintiff Stated a Plausible Claim, He Failed to Exhaust
           Administrative Remedies ............................................................. 20

           i.    Administrative Exhaustion is a Prerequisite to Plaintiff's
                 Relief .......................................................................................... 20

           ii.   BOP Administrative Exhaustion Process ................................... 22

           iii.     Plaintiff Failed to Exhaust Administrative Remedies ................ 23

    IV.     Dr. Petry is Entitled to Qualified Immunity ..................................... 25

CONCLUSION ............................................................................................. 28

DESCRIPTION OF EXHIBITS ......................................................................... 29

CERTIFICATE OF SERVICE ............................................................................ 29

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aldaba v. Pickens*,
844 F.3d 870 (10th Cir. 2016) ................................................... 25

*Alvarado v. KOB-TV, L.L.C.*,
493 F.3d 1210 (10th Cir. 2007) ................................................... 5

*Anderson v. Creighton*,
483 U.S. 635 (1987) ................................................... 25

*Ashcroft v. Iqbal*,
129 S.Ct. 1937 (2009) ................................................... 14

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................... 5-6, 6, 14

*Bell Atl. Corp. Twombly*,
550 U.S. 544 (2007) ................................................... 6

*Bennett v. Passic*,
545 F.2d 1260 (10th Cir. 1976) ................................................... 14

*Bias v. Cornell Corr., Inc.*,
159 F. App'x 868 (10th Cir. 2005) ................................................... 21

*Bingham v. Zavaras*, No. 10-CV-00604-DME-CBS,
2011 WL 2610124 (D. Colo. Apr. 20, 2011) ................................................... 28

*Bivens v. Six Unknown Fed. Narcotics Agents*,
403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971) ................................................... 2, 10

*Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*,
757 F.3d 1125 (10th Cir. 2014) ................................................... 5

*Carlson v. Green*,
446 U.S. 14 (1980) ................................................... 10

*Choate v. Lemmings*,
294 F. App'x 386 (10th Cir. 2008) ................................................... 26

*Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V., Case*

No. 19-1151, 2020 WL 4743833 (10th Cir. Aug. 17, 2020) ...................................... 7

*Corr. Servs. Corp. v. Malesko*,
534 U.S. 61 (2001) .................................................... 11

*Cox v. Glanz*,
800 F.3d 1231 (10th Cir. 2015) .................................. 27

*Davis v. Holder,* No. 12-CV-02122-REB-KMT,
2014 WL 1713429 (D. Colo. Apr. 23, 2014) ............................ 28

*Davis v. Passman*,
442 U.S. 228 (1979) .................................................... 10

*Despain v. Salt Lake Area Metro Gang Unit*,
13 F.3d 1436 (10th Cir. 1994) .................................... 8

*District of Columbia v. Wesby*,
--- U.S. ----, 138 S.Ct. 577 (2018) .............................. 27

*Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*,
514 F.3d 1063 (10th Cir. 2008) ................................... 4

*Eldridge v. Berkebile*,
526 F. App'x 897 (10th Cir. 2013) ............................... 21

*Estelle v. Gamble*,
429 U.S. 97 (1976) ................................... 12, 12, 13, 17

*Farmer v. Brennan*,
511 U.S. 825 (1994) .................................... 12, 13

*Fed. Deposit Ins. Corp. v. Oaklawn Apartments*,
959 F.2d 170 (10th Cir. 1992) ...................................... 4

*Fields v. Okla. State Penitentiary*,
511 F.3d 1109 (10th Cir. 2007) ................................... 21

*Franklin v. Kansas Dep't of Corr.*,
160 F. App'x 730 (10th Cir. 2005) ............................... 19

*Frasier v. Evans*,
992 F.3d 1003 (10th Cir. 2021) (per curiam) ......................... 26

*Gadlin v. Sybron Int'l Corp.*,
222 F.3d 797 (10th Cir. 2000) ..................................... 3

*Garza v. Davis,*
    596 F. 3d 1198 (10th Cir. 2010) ........................................................................ 21

*Gee v. Pacheco,*
    627 F.3d 1178 (10th Cir. 2010) .......................................................................... 5

*GFF Corp. v. Associated Wholesale Grocers, Inc.,*
    130 F.3d 1381 (10th Cir. 1997) .......................................................................... 5

*Gilbert-Mitchell v. Allred,* No. 12-CV-01997-BNB,
    2013 WL 229996 (D. Colo. Jan. 22, 2013) ..................................................... 14

*Graff v. Kelly,*
    1991 Okla. 71, 814 P.2d 489 (1991) .................................................................. 9

*Habyarimana v. Kagame,*
    821 F. Supp. 2d 1244 (W.D. Okla. 2011) .......................................................... 7

*Hagan v. Credit Union of Am.,* No. 11–1131–JTM,
    2011 WL 6739595 (D. Kan. Dec. 22, 2011) ..................................................... 4

*Hall v. Witteman,*
    584 F.3d 859 (10th Cir. 2009) ........................................................................... 5

*Harlow v. Fitzgerald,*
    457 U.S. 800 (1982) ......................................................................................... 25

*Hilska v. Jones,*
    217 F.R.D. 16 (D. D.C. 2003) ............................................................................ 7

*Hudson v. McMillian,*
    503 U.S. 1 (1992) ............................................................................................. 12

*Hui v. Castaneda,* 5
    59 U.S. 799, 803 (2010) ................................................................................. 2, 9

*Hunter v. Bryant,*
    502 U.S. 224 (1991) (per curiam) ................................................................... 25

*Ingram v. Faruque,*
    728 F.3d 1239 (10th Cir. 2013) .......................................................................... 9

*Jenkins v. Wood,*
    81 F.3d 988 (10th Cir. 1996) ........................................................................... 15

*Johnson v. Jones,*
    340 F.3d 624, (8th Cir. 2003) .......................................................................... 21

*Jones v. Bock*,
  549 U.S. 199 (2007) ............................................................ 20, 22, 24, 24

*Kansas Penn Gaming, LLC v. Collins*,
  656 F.3d 1210 (10th Cir. 2011) .................................................. 15, 16, 17

*Kentucky v. Graham*,
  473 U.S. 159 (1985) ............................................................................ 14

*Kerns v. Bader*,
  663 F.3d 117381 (10th Cir. 2011) ............................................................ 27

*Malley v. Briggs*,
  475 U.S. 335 (1986) ............................................................................ 25

*Martinez v. Beggs*,
  563 F.3d 1082 (10th Cir. 2009) ............................................................ 13

*Martinez-Jones v. Dulce Indep. Sch.,* No. CIV 07-0703 JB/WDS,
  2008 WL 2229457 (D.N.M. Mar. 14, 2008) .................................................. 4

*Mata v. Saiz*,
  427 F.3d 745 (10th Cir. 2005) ............................................................ 13

*McGee v. Corizon*,
  831 F. App'x 381–84 (10th Cir. 2020) .................................................... 19

*Medina v. Cram*,
  252 F.3d 1124 (10th Cir. 2001) ............................................................ 27

*Mitchell v. Maynard*,
  80 F.3d 1433 (10th Cir. 1996) ............................................................ 14

*Montoya v. Vigil*,
  898 F. 3d 1056 (10th Cir. 2018) .......................................................... 28

*Morris v. Fallin,* No. CIV-16-1297-D,
  2017 WL 1683906 at *7 (W.D. Okla. March 29, 2017) ...................................... 13

*Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*,
  484 U.S. 97 (1987) .......................................................................... 4

*Perkins v. Kan. Dept. of Corr.*,
  165 F.3d 803 (10th Cir. 1991) ............................................................ 18

*Persaud v. Doe*,
  213 F. App'x 740 (10th Cir. 2007) ........................................................ 14

*Petersen v. Carbon Cty.*,
    156 F.3d 1244 (10th Cir. 1988) ................................................................ 4

*Peterson v. Jensen*,
    371 F.3d 1199 (10th Cir. 2004) ............................................................... 26

*Porter v. Nussle*,
    534 U.S. 516 (2002) .............................................................................. 20

*Ross v. Blake*,
    ---U.S.---, 136 S. Ct. 1850, 1856 (2016) .............................................. 21

*Ross v. Cty of Bernalillo*,
    365 F.3d 1181 (10th Cir.2004) ............................................................... 21

*Ruhrgas AG v. Marathon Oil Co.*,
    526 U.S. 574 (1999) ............................................................................... 3

*Sakrekov v. Grismer,* No. CIV-12-130-W,
    2013 WL 627335 (W.D. Okla. Feb. 20, 2013) ...................................... 9-10

*Sanaah v. Howell*,
    384 F. App'x 737 (10th Cir. 2010) ........................................................ 14

*Sealock v. Colorado*,
    218 F.3d 1205 (10th Cir. 2000) ............................................................. 13

*Shamblin v. Pham*,
    221 F.3d 1353 (10th Cir. 2000) ......................................................... 19-20

*Simmat v. U.S. Bureau of Prisons*,
    413 F.3d 1225 (10th Cir. 2005) ......................................................... 24-25

*Simpkins v. District of Columbia Government*,
    108 F.3d 366 (D.C. Cir. 1997) ............................................................. 7-8

*Smith v. Arguello*,
    415 F. App'x 57 (10th Cir. 2011) .......................................................... 14

*Steele v. Fed. Bureau of Prisons*,
    355 F.3d 1204 (10th Cir. 2003) ............................................................. 14

*Strain v. Regalado*,
    977 F.3d 984–97 (10th Cir. 2020) ............................................... 12, 13, 17

*Unum Life Ins. Co. of Am. v. Paisley,* No. 14- 2315-CM-KGG,
    2014 WL 5390243 (D. Kan. Oct. 22, 2014) ........................................... 3-4

*White v. Kansas Dep't of Corr.*,
    664 F. App'x 734–42 (10th Cir. 2016) .................................................................. 19, 19

*Whitsell v. United States*,
    198 F.3d 260 (10th Cir.1999) ............................................................................ 4

*Wilder v. Turner*,
    490 F.3d 810 (10th Cir. 2007) .......................................................................... 25

*Williams v. Bowman Livestock Equip. Co.*,
    927 F.2d 1128 (10th Cir. 1991) ........................................................................ 4

*Willis v. Gov't Emps. Ins. Co., No. 13-280 KG/KK*,
    2016 WL 3951730 (D.N.M. Feb. 8, 2016)(2) ................................................. 4

*with Cornish v. United States*,
    885 F. Supp. 2d 198 (D.D.C. 2012) ................................................................. 8

*Woodford v. Ngo*,
    548 U.S. 81 (2006) .............................................................................. 21, 23, 24

*Yousef v. Reno*,
    254 F.3d 1214 (10th Cir. 2001) ................................................................. 20-21

*Ziglar v. Abbasi*,
    137 S. Ct. 1843 (2017) ...................................................................... 10, 11

## Statutes

28 U.S.C. § 1915A ............................................................................................. 20

42 U.S.C. § 1983 ......................................................................................... 10, 15

42 U.S.C. § 1997e ....................................................................................... 20, 20

§ 224 ..................................................................................................................... 9

§ 1983 ................................................................................................................. 14

## Other

28 C.F.R. § 542.10 ........................................................................................... 22

28 C.F.R. § 542.13 ..................................................................................... 22, 22

Fed. R. Civ. P. 4 ..................................................................................... 6, 7, 8

Fed. R. Civ. P. 65 ............................................................................................. 12

Federal Rules of Civil Procedure 12 ................................................. 2-1, 3, 4

Rule 4 ..................................................................................................... 4, 7, 8

Rule 12 ...................................................................... 4, 5, 7, 10, 20, 24

Defendants George Petry and Theresa Stenmark ("Defendants") seek dismissal of this case in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1), 12(b)(2), 12(b)(5), and 12(b)(6). Because Plaintiff has failed to effect proper service on Defendants, the Court lacks personal jurisdiction. Next, Nurse Stenmark is entitled to absolute immunity, because she is a Public Health Services ("PHS") employee. Finally, Counts I and II of Plaintiff's Amended Complaint [Doc. 58] fails to state a claim upon which relief can be granted, and Dr. Petry is entitled to qualified immunity[1]. The case is ripe for dismissal, and in support of this motion Defendants respectfully submit the following brief in support.

### INTRODUCTION[2]

Plaintiff Edward Nellson, Federal Register Number 31408-007, is confined at United States Penitentiary (USP) Florence – High in Colorado, where he is serving a life sentence. Complaint for Monetary Damages and Injunctive Relief [Doc. 1] at 1; *id.* at 3, ¶ 3; *see also* Federal Bureau of Prisons ("BOP") Inmate Locator (*available at* https://www.bop.gov/inmateloc/). On March 22, 2020, Plaintiff's attorney filed a Complaint for Monetary Damages and Injunctive Relief [Doc. 1] in the United States District Court for the District of Columbia. Plaintiff brought *Bivens* claims against

---

[1] The United States is substituted for claims of medical negligence against Dr. Petry – Counts III and IV.

[2] This Introduction includes Background information and procedural history.

1

seventeen individuals working for the Federal Bureau of Prisons ("BOP"). Complaint [Doc. 1] at 1.[3]

On April 2, 2020, Plaintiff filed Declarations of Service [Docs. 10 & 11] in the United States District Court for the District of Columbia reporting that on March 27, 2020, a process server sent copies of the summons, the complaint, exhibits, and associated papers by United States Mail to Defendants Petry [Doc. 10] and Stenmark [Doc. 11]. The papers were mailed to the "Oklahoma City [sic] Transfer Center," and Plaintiff's process server reported that the papers were delivered on March 30, 2020. Declarations of Service [Docs. 10 & 11] at 1.

The tracking receipts submitted as proof of service do not show that the papers were served on Defendants Petry and Stenmark. Instead, on March 30, 2020, the "item[s] [were] signed for by C BEBOLIT." Plaintiff's Exhs. 1 [Docs. 10-1 & 11-1] at 2. On May 7, 2020, the United States District Court for the District of Columbia determined that venue was improper in that district and ordered the matter transferred. Order Transferring Case to the Eastern District of Kentucky [Doc. 34].

After the matter was transferred to the Eastern District of Kentucky, Plaintiff moved to sever his claims and transfer venue over some of the claims. He asked the Eastern

---

[3] "In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388, 397, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971), this Court recognized an implied cause of action for damages against federal officers alleged to have violated the petitioner's Fourth Amendment rights. We subsequently found such a remedy available for violations of an individual's rights under the Cruel and Unusual Punishments Clause of the Eighth Amendment and the Due Process Clause." *Hui v. Castaneda*, 559 U.S. 799, 803 (2010).

District of Kentucky to retain his claims against the BOP and eight individual defendants. He sought transfer of his claims against four individual defendants to the Northern District of West Virginia, against three individual defendants to the Middle District of Pennsylvania, and against Defendants Petry and Stenmark to the Western District of Oklahoma.   Motion to Sever and Transfer Venue [Doc. 38] at 6-7.

On June 12, 2020, the United States District Court for the Eastern District of Kentucky granted Plaintiff's motion.   Relevant to the proceedings in this Court, the Honorable David L. Bunning ordered that Plaintiff's "claims against Defendants Gary Petry and Theresa Stenmark shall be severed and transferred to the Western District of Oklahoma."   Order [Doc. 43] at 2 (emphasis removed).   On October 12, 2020, Plaintiff filed an Amended Complaint [Doc. 58] but still failed to serve the Individual Defendants. Plaintiff now seeks money damages in excess of $100,000,000.00 alleging inadequate medical treatment in violation of the Eighth Amendment after Plaintiff fell out of his upper bunk in his cell at the Federal Transfer Center ("FTC") in Oklahoma City.   *Id*. at 3 & 16.

## **STANDARD OF REVIEW**

### *Fed. R. Civ. P. 12(b)(2) & (b)(5)*

Before permitting a case to proceed, the Court must resolve jurisdictional questions and ensure that it has personal jurisdiction over a defendant.   *Gadlin v. Sybron Int'l Corp.,* 222 F.3d 797, 799 (10th Cir. 2000) (quoting *Ruhrgas AG v. Marathon Oil Co.,* 526 U.S. 574, 577 (1999)).   Before exercising personal jurisdiction over a defendant, that individual must be properly served.   *See, e.g., Unum Life Ins. Co. of Am. v. Paisley*, No. 14- 2315-

CM-KGG, 2014 WL 5390243, at *1 (D. Kan. Oct. 22, 2014) (citing *Petersen v. Carbon Cty.*, 156 F.3d 1244 (10th Cir. 1988)); *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co., Ltd.*, 484 U.S. 97, 104 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."); *Hagan v. Credit Union of Am.,* No. 11–1131–JTM, 2011 WL 6739595, at *1 (D. Kan. Dec. 22, 2011) ("A federal court lacks personal jurisdiction over a defendant if service of process is insufficient under Rule 4."); *Willis v. Gov't Emps. Ins. Co.*, No. 13-280 KG/KK, 2016 WL 3951730, at *2 (D.N.M. Feb. 8, 2016)("a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction is appropriate when a plaintiff does not meet 'the procedural requirement of service' of process").

The plaintiff bears the burden of establishing the court's personal jurisdiction and the "validity of the service of process".   *Fed. Deposit Ins. Corp. v. Oaklawn Apartments*, 959 F.2d 170, 174 (10th Cir. 1992) (citing *Williams v. Bowman Livestock Equip. Co.,* 927 F.2d 1128, 1130 (10th Cir. 1991); *see also Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1070 (10th Cir. 2008); *Martinez-Jones v. Dulce Indep. Sch.,* No. CIV 07-0703 JB/WDS, 2008 WL 2229457, at *4 (D.N.M. Mar. 14, 2008) (citing *Whitsell v. United States*, 198 F.3d 260, 260 (10th Cir.1999) *and citing* Fed.R.Civ.P. 12(b)(5)).[4]

---

[4] The court may resolve "claims of lack of personal jurisdiction and insufficient service by reviewing the pleadings and affidavits," submitted by the parties.   *Fed. Deposit Ins. Corp.*, 959 F.2d at 174.

*Fed. R. Civ. P. 12(b)(6)*

In ruling on a 12(b)(6) motion, the Court's function "'is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's amended complaint alone is legally sufficient to state a claim for which relief may be granted.'" *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014) (citation omitted). While the use of exhibits, such as those included in this Motion, might ordinarily require the Court to convert the motion into one for summary judgment, relevant exhibits referenced in the petition and central to the plaintiff's claim may be considered. *Id.*

Under such circumstances, the Court need not convert the motion into one for summary judgment. *See, e.g., GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384 (10th Cir. 1997) ("Notwithstanding . . . general principles, if a plaintiff does not incorporate by reference or attach a document to its complaint, but the document is referred to in the complaint and is central to the plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss."); *Alvarado v. KOB-TV, L.L.C.*, 493 F.3d 1210, 1215 (10th Cir. 2007) (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010).

A motion to dismiss pursuant to Rule 12(b)(6) may also operate to test the sufficiency of the complaint using a two-step approach. *Hall v. Witteman*, 584 F.3d 859, 863 (10th Cir. 2009). The first step in testing the sufficiency of the complaint is to identify

5

conclusory allegations that should be disregarded. *Ashcroft v. Iqbal,* 556 U.S. 662, 679-80 (2009).  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. Twombly*, 550 U.S. 544, 555 (2007) (citations and quotation marks omitted).  Under this first step, Plaintiff's "allegations" that merely recite or state the elements of his claims must be disregarded.

After excluding conclusory allegations, the second step is for the court to determine whether the remaining well-pled allegations "state a claim to relief that is plausible on its face."  *Iqbal*, 556 U.S. at 678-79 (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. In contrast, "[w]here a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  *Id.* (citation and internal quote marks omitted).  Plaintiff's factual allegations must possess enough heft to raise a right to relief above a speculative level. *Id.*  A legally sufficient complaint must establish more than a "sheer possibility" that the plaintiff's claim is true. *Iqbal,* 556 U.S. at 678.

## ARGUMENT & AUTHORITY

### I.      Plaintiff Has Not Effected Proper Service, So the Court Lacks Personal Jurisdiction

Fed. R. Civ. P. 4(i) governs service of process upon the United States, its agencies, and employees.  "Before a federal court may exercise personal jurisdiction over a

defendant, the procedural requirement of service of summons must be satisfied." *Omni Capital Int'l, Ltd.,* 484 at 104. "Service of process notifies a defendant of the commencement of an action against him and 'marks the court's assertion of jurisdiction over the lawsuit.'" *Compañía de Inversiones Mercantiles, S.A. v. Grupo Cementos de Chihuahua S.A.B. de C.V.*, Case No. 19-1151, 2020 WL 4743833, at *16 (10th Cir. Aug. 17, 2020) (slip op.) (quoting *Okla. Radio Assocs. v. Fed. Deposit Ins. Corp.*, 969 F.2d 940, 943 (10th Cir. 1992)).

Service in a manner consistent with Rule 4 "provides the mechanism by which a court 'having venue and jurisdiction over the subject matter of an action asserts jurisdiction over the person of the party served.'" *Habyarimana v. Kagame*, 821 F. Supp. 2d 1244, 1251 (W.D. Okla. 2011), *aff'd*, 696 F.3d 1029 (10th Cir. 2012)(quoting *Okla. Radio Assocs.,* 969 F.2d at 943). Upon the filing of a motion to dismiss for defective or insufficient service under Rule 12(b)(5), the burden shifts to the plaintiff who must establish that he properly effected service as required under Rule 4. *Hilska v. Jones*, 217 F.R.D. 16, 20 (D. D.C. 2003).

To serve a federal officer or employee sued in an individual capacity for an act or omission occurring in connection with duties performed on behalf of the United States, "a party must serve the United States *and also serve the officer or employee* under Rule 4(e), (f), or (g)." Fed. R. Civ. P. 4(i)(3) (emphasis added). A *Bivens* claim is brought against a federal officer or employee in an individual capacity, and "every court of appeals that has spoken on the question has decided that defendants in *Bivens* actions must be served as

individuals, pursuant to Rule 4(e)." *Simpkins v. District of Columbia Government*, 108 F.3d 366, 369 (D.C. Cir. 1997) (*compiling cases*).   When a plaintiff sues a federal officer in an individual capacity, the plaintiff must effect personal service on the officer.   Service on an agency does not constitute service on an officer as an individual.   *Despain v. Salt Lake Area Metro Gang Unit*, 13 F.3d 1436, 1438 (10th Cir. 1994).

Service may be accomplished under Rule 4(e) by delivering a copy of the summons and the complaint to the individual personally, by leaving a copy of each at the individual's home with a person of suitable age and discretion who lives there, or by delivering a copy of each to an agent properly designated by law or appointment to receive service of process on behalf of the individual.   Fed. R. Civ. P. 4(e)(2).[5]   Alternatively, service on an individual may be accomplished by following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made.   Fed. R. Civ. P. 4(e)(1).

Plaintiff did not deliver copies of the summons and the complaint to Defendants Petry and Stenmark individually.   He did not leave copies with persons of suitable age and discretion at their homes.   He has not demonstrated that C. Bebolit, who received delivery of the mail at the Federal Transfer Center, was their designated agent for service of process,

---

[5] *Compare with Cornish v. United States*, 885 F. Supp. 2d 198, 204-05 (D.D.C. 2012) ("Here, Cornish's service of process was insufficient …. Moatz's unsigned return receipt does not show that Moatz received process, and Cornish provides no evidence that anyone named Lennox Cooper was authorized to accept service of process as Doll's agent …. Cornish's failure to properly effect personal service of process upon the defendants also deprives the court of personal jurisdiction over the defendants in their individual capacities.").

nor has he shown that his attempt at service comports with state law.[6]   Because Plaintiff

failed to effect service of process, this Court lacks personal jurisdiction over Defendants

Stenmark and Petry.

**II.    Defendant Stenmark, As An Employee of the United States Public Health Service, Is Entitled to Absolute Immunity**

In Count I, Plaintiff alleges an Eighth Amendment violation by CDR Stenmark[7] for

failure to provide adequate medical treatment. Amended Complaint [Doc. 58] at 12.

Specifically, Plaintiff claims that CDR Stenmark refused to prescribe pain medication to

Plaintiff, or order an MRI, choosing instead to give him a wheelchair and place him on a

flight to Atlanta, GA.   Amended Complaint [Doc. 58] at ¶¶14, 17-21.   CDR Stenmark is

an employee of the United States PHS and was classified as such an employee during her

assignment to FTC Oklahoma City and during the time period at issue in the Plaintiff's

Amended Complaint.   *See* Exh. 1, Declaration of CAPT Melissa Hulett, ¶¶2-4. The Public

Health Service Act, § 224(a), 42 U.S.C.A. § 233(a) exempts United States PHS employees

from suit under *Bivens. Hui,* 559 U.S. at 812 ("the immunity provided by § 233(a)

precludes *Bivens* actions against individual PHS officers or employees for harms arising

out of conduct described that section."); *accord, Ingram v. Faruque*, 728 F.3d 1239, 1247

(10th Cir. 2013); *Sakrekov v. Grismer*, No. CIV-12-130-W, 2013 WL 627335, at \*1 (W.D.

Okla. Feb. 20, 2013) ("[D]efendants, as commissioned officers of the Public Health

---

[6] *See Graff v. Kelly*, 1991 Okla. 71, 814 P.2d 489 (1991) (service of process on a receptionist at the defendant's place of business did not establish *in personam* jurisdiction).
[7] CDR Stenmark is not identified in Counts II-IV.

Service, are absolutely immune from liability.").   Because CDR Stenmark was a United States PHS employee during the relevant timeframe at issue, she must be dismissed as she has absolute statutory immunity from suit.

### III.   Plaintiff's Individual Capacity Claim[8] Against Dr. Petry Should be Dismissed Pursuant to Rule 12(b)(6)

In *Bivens v. Six Unknown Fed. Narcotics Agents,* 403 U.S. 388 (1971), the Supreme Court determined that an action for damages may be permissible against a federal agent who "acting under color of authority" violates an individual's constitutional rights.   While some courts refer to *Bivens* claims as the "federal analog" to 42 U.S.C. § 1983 – it is not.   The Supreme Court in *Abbasi* recently explained the narrow scope of *Bivens* claims.

### A.  Individual Capacity Claims Against Federal Actors Are Rare

The Supreme Court recently expounded on the rarity *Bivens* remedies cautioning that it is a "disfavored judicial activity."   *Ziglar v. Abbasi,* 137 S. Ct. 1843, 1857 (2017)(quoting *Iqbal,* 556 U.S. at 675).   Other than *Bivens* itself (which involved a warrantless search in violation of the Fourth Amendment), this "implied cause of action" has only been found to exist by the Supreme Court on two other occasions – a Fifth Amendment violation in *Davis v. Passman*, 442 U.S. 228 (1979) and an Eighth Amendment violation in *Carlson v. Green*, 446 U.S. 14 (1980) when federal jailers allegedly failed to provide a prisoner adequate medical attention. *Abbasi,* 137 S. Ct. at 1854.

---

[8] The United States has been substituted, by operation of law, for Claims III and IV. This brief therefore addresses only Counts I and II.

It has been almost 40 years since the Supreme Court has allowed a *Bivens* remedy in a "new context," and *Abbasi* indicates it is not inclined to do so anytime soon.  The *Abbasi* Court acknowledged that it has evolved over time in how it views implied causes of action and, while not overturning *Bivens,* noted it "is possible that the analysis in the Court's three *Bivens* cases might have been different if they were decided today."  *Id.* at 1856.  The *Abbasi* Court recognized that if Congress desired for private litigants to have a personal right of action against a federal employee, the "far better course is for Congress to confer that remedy in explicit terms."  *Id.* at 1855. The Court has "consistently refused to extend *Bivens* to any new context or new category of defendants." *Id.* at 1857 (citing *Corr. Servs. Corp. v. Malesko,* 534 U.S. 61, 68 (2001)).  Therefore, the "antecedent" questions for courts in any *Bivens* case is whether to devise a new remedy. *Id.* at 1864 ("[T]he first question a court must ask…is whether the claim arises in a new *Bivens* context, *i.e.,* whether 'the case is different in a meaningful way from previous *Bivens* cases decided by this Court.'").

A "context is new" when there is an extension, however "modest," of the three claims approved of in *Bivens*, *Davis*, or *Carlson. See id*. at 1859, 1864. Following *Abbasi*, any prior circuit or district court precedents that allowed for a *Bivens* remedy must be reevaluated.   Here, Plaintiff alleges a violation of his Eighth Amendment rights for failure to provide adequate medical treatment. While the allegations do not create a "new context" of *Bivens*, they still fail to rise to the level of a constitutional violation.

### B.  Plaintiff Fails to State a Plausible Eighth Amendment Violation[9]

### i.  Legal Precedent Related to Deliberate Indifference

The United States is required to provide medical care for incarcerated individuals. *Estelle v. Gamble*, 429 U.S. 97, 102 (1976). Prison officials violate the Eighth Amendment when they are deliberately indifferent to the serious medical needs of prisoners in their custody. *Id.* at 104-06. While receiving some level of care does not foreclose a deliberate indifference claim, *Strain v. Regalado*, 977 F.3d 984, 989–97 (10th Cir. 2020), society does not expect that prisoners will have unqualified access to health care. *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Further, the duty to attend to a prisoner's medical needs does not presuppose "that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle* 429 U.S. at 105. An inmate cannot hold a prison official liable unless he shows that he suffered acts or omissions sufficiently harmful to evidence deliberate indifference to the inmate's serious medical needs. *Id.* at 106 (quotation marks omitted). "It is only such indifference that can offend 'evolving standards of decency" in violation of the Eighth Amendment. *Id.*

Unless medical needs were serious or life threatening and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. *Estelle*, 429 U.S at 104; *Farmer v. Brennan*, 511 U.S. 825 (1994).   "[T]wo types of conduct may constitute deliberate indifference in prison medical

---

9  Plaintiff includes a cursory reference the Administrative Procedures Act and Fed. R. Civ. P. 65 for injunctive relief, Amended Complaint [Doc. 58] at ¶1, but fails to reference these provisions in further in the pleadings.

case: (1) a medical professional failing to treat a serious medical condition properly; and (2) a prison official preventing an inmate from receiving medical treatment or denying access to medical personnel capable of evaluating the inmate's condition." *Morris v. Fallin*, No. CIV-16-1297-D, 2017 WL 1683906 at *7 (W.D. Okla. March 29, 2017)(quoting *Self v. Crum*, 739 F.3d 1227, 1231 (10th Cir. 2006)). And the test for either case requires both an objective and subjective component. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005).

Regarding the seriousness of the medical condition, the plaintiff must demonstrate that the harm he complains of is sufficiently serious. *See Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009).  Unless medical needs were serious or life threatening, and the defendant was deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. *Estelle*, 429 U.S at 104; *Farmer v. Brennan*, 511 U.S. 825 (1994). A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment or care or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention or if denial or a delay in treatment causes the inmate to suffer a life-long handicap or permanent loss. *Id.*

To satisfy the objective component, the medical need must be one that has been diagnosed by a physician as mandating treatment or must be so obvious that even a lay person would easily recognize the necessity for a doctor's attention. *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000). For the subjective component, "a plaintiff must allege that an actor possessed the requisite intent, together with objectively indifference conduct, to state a claim for deliberate indifference." *Strain*, 977 F.3d at 989–97.  Thus,

an "official's intent matters not only as to what the official did (or failed to do), but also why the official did it." *Id*.

In sum, the Court must "address both whether the medical care was deficient enough to qualify as a deprivation of constitutional significance and whether the defendant intended the deprivation by acting with deliberate indifference." *Sanaah v. Howell*, 384 F. App'x 737, 741 (10th Cir. 2010)(failure to state a claim of deliberate indifference).

### ii. Plaintiff Fails to Allege Sufficient Facts Establishing Dr. Petry's Personal Involvement in Count II

When a plaintiff alleges violations of his constitutional rights, the factual allegations must be sufficiently specific to allege personal participation **by each defendant** that he alleges violated his constitutional rights. *Smith v. Arguello*, 415 F. App'x 57, 60 (10th Cir. 2011)(citing *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1948 (2009)); *Gilbert-Mitchell v. Allred*, No. 12-CV-01997-BNB, 2013 WL 229996, at *2–3 (D. Colo. Jan. 22, 2013) (citing *Kentucky v. Graham,* 473 U.S. 159, 166 (1985)).   Individual liability in a civil rights action must be based upon personal participation. *See Mitchell v. Maynard*, 80 F.3d 1433, 1441 (10th Cir. 1996)(Section 1983 claim)[10]; *Bennett v. Passic*, 545 F.2d 1260, 1262-63 (10th Cir. 1976); *Persaud v. Doe*, 213 F. App'x 740, 743 (10th Cir. 2007) (citing *Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1214 (10th Cir. 2003)).

---

[10] Although the inmate in Mitchell was seeking relief under § 1983, the requirement of personal participation is the same in a *Bivens* action. See *Iqbal*, 556 U.S. at 675-76 ("the implied cause of action [under *Bivens*] is the federal analog to suits brought against state officials under § 1983") (internal quotations omitted).

Plaintiff styles Count II as a *Bivens* claim against Defendant Petry as a "Supervisory Defendant" and a "healthcare supervisory official who condoned and ratified the conduct of Defendants identified above." Amended Complaint [Doc. 58] at 13-14, ¶¶57 & 58. Yet in *Iqbal*, the Supreme Court held that government officials may not be held liable, under *Bivens* (or 42 U.S.C. § 1983), for unconstitutional conduct of a subordinate employee under a theory of *respondeat superior*. Vicarious liability is inapplicable to *Bivens* suits, so "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. In a *Bivens* suit, each government official, "his or her title notwithstanding, is only liable for his or her own misconduct." *Id*. at 677. Moreover, conclusory allegations are not sufficient to state a constitutional violation, *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996) (internal quotation marks and citation omitted), nor are collective allegations against an entire group of defendants. *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (failure to state a claim).

Accordingly, Count II should be dismissed for failure to state a claim.

### iii.   Counts I and II Fail to Rise to the Level of Deliberate Indifference

Here, Plaintiff initially filed suit against seventeen different federal employees in their individual capacities. Complaint [Doc. 1] at 1.  Plaintiff attempts to construct a specific constitutional violation committed by Dr. Petry when such a conclusion is unsupported by Plaintiff's own allegations.  Notably, Plaintiff only pleads specific treatment by Dr. Petry which occurred during a one-day period from March 28, 2016 (the

day his injury occurred) to March 29, 2016 (where Plaintiff claims Dr. Petry put him on a plane to Atlanta, GA). *Id.* at 10-11, ¶¶31-37.   As explained above, Plaintiff's other conclusory and generalized statements regarding Dr. Petry should be disregarded under *Twombly/Iqbal*.[11]

Plaintiff's only non-conclusory allegations relate to Dr. Petry's alleged failure to prescribe Plaintiff pain medication from his visit on March 28, 2016 or order a spine MRI, and an alleged misdiagnosis. Amended Complaint [Doc. 58] at ¶¶5, 17, 18, 21, 49. However, a review of Plaintiff's own medical records is most instructive and indicate that his *Bivens* claims do not rise to a constitutional violation.   After his fall on March 28, 2016, Plaintiff was unresponsive for 2-3 minutes, vomited twice, and had a "large hematoma to [the] right top of [his] head".   Medical Assessment [Doc. 59] p. 6.   Plaintiff was assessed by BOP medical staff and was then sent to the Emergency Room at Southwest Regional Medical Center. [*Id.*]   After returning from the ER, records state:

> Inmate has just returned from going to Southwest Regional Medical Center after failing of the top bunk and hitting his head and elbow on the concrete. He was diagnosed with a *mild concussion* without any bleeding.   He reports having nausea, visual changes, and dizziness.
> …

---

11 For example, Plaintiff alleges that he was transferred to various facilities, "including some located in Oklahoma, Florida, back to Oklahoma, Florida again, and California" [Doc. 58 at 10, ¶40] and would "run back into Dr. Petry" who continued to deny care. [*Id.*] at ¶5. Also, claiming Dr. Petry "reviewed all of Mr. Nellson's records, not only after his injury, but for years thereafter." [*Id.*] at ¶13. Plaintiff contends continuous civil rights violations that started with Dr. Petry's alleged misdiagnoses which allegedly made it more difficult for Plaintiff to receive subsequent care. [*Id.*] at ¶¶5, 17, 18, 21, 49. Plaintiff also generally states that he was repeatedly placed in solitary confinement and denied a wheelchair [*Id.*] p. 1, but makes no specific allegations against Dr. Petry regarding this.

He was given 25mg Phenergan IM injection without any incident.  He was instructed to notify medical if he has any complications such as confusion, sleepiness, projectile vomiting, or continuous vomiting, if dizziness worsens, loss of use of arms and legs, clear or bloody fluid coming from ears, and increased difficulty with vision.   He verbalized understanding.

Assessment [Doc. 59] p. 2 (emphasis added).

Plaintiff later saw Dr. Duru on October 12, 2017.   Dr. Duru noted that Plaintiff was:

evaluated at an outside facility at the time with a non-contrast Head CT which was reportedly normal.  He was deemed to have had a concussion.   In May 2016 he had an MRI Brain which was reportedly normal. However, following said fall he reportedly developed gain instability/unsteadies and needs a walker to ambulate. He denies dizziness, lightheaded, focal weakness, bowel or bladder incontinence. June 2016, he was evaluated by ENT specialist.

Medical Assessment [Doc. 62] p. 1.   The medical records also indicate that Plaintiff began having seizures in summer 2016 [*Id*. p.2], and presented to a specialist due to an abnormal EEG in April 2017.   Dr. Duru ordered a brain MRI and started Plaintiff on Keppra (a medication to treat Epilepsy) noting that the "etiology is unclear" because Plaintiff's "strength, reflexes, and coordination is normal; [h]owever he is unable to stand let alone walk." [*Id.* p. 4-5]

A negligent failure to provide adequate medical care, including one constituting medical malpractice, does not give rise to a constitutional violation. *See Estelle,* 429 U.S. at 105-06. And a misdiagnosis, even one constituting medical malpractice, is still insufficient to satisfy the subjective component of a deliberate indifference claim.   *Strain,* 977 F.3d at 989–97.   Likewise, it is inappropriate for the Court to "second-guess" a physician's course of treatment once having the benefit of hindsight. *Id*. Finally, an inmate who merely disagrees with a diagnosis or a prescribed course of treatment does not state a

17

constitutional violation. *See id.* at 107; *Perkins v. Kan. Dept. of Corr.*, 165 F.3d 803, 811 (10th Cir. 1991).

Here, Plaintiff references multiple doctor visits and treatments provided by prison physicians in the last four years.   Yet, he takes issue with the initial assessment of his injuries at the FTC essentially claiming that he should have been referred to a specialist sooner and prescribed different medication.   [*Id.*] ¶15, 19, 20, 22.   Importantly, the timeframe at issue is March 28th to March 29th, and the medical records reflect that during this timeframe, Dr. Petry's only involvement was his review of Plaintiff's medical records. [Doc. 59] p. 9.

Upon Plaintiff's return to the FTC from the Emergency Room on March 28, 2016, medical staff administered medication[12], conducted a follow up assessment, and asked him to report back with any changes in condition. [Doc. 59] p. 2.   Plaintiff essentially claims that he should have been prescribed a different medication or referred to a specialist sooner; this is insufficient to state a claim of deliberate indifference and surmounts, at best, to medical negligence. And while Plaintiff takes issue with his initial medical treatment, asserting he was misdiagnosed at the FTC immediately after his fall, Plaintiff's own medical records indicate that his more severe symptoms developed after his fall and in the summer of 2016 – after his initial assessment at the FTC.

---

12 Plaintiff was prescribed Phenergan.   Phenergan can be used to prevent or control nausea, vomiting, and dizziness, and can be used to control pain and anxiety. *See* Mayo Clinic.org, https://www.mayoclinic.org/drugs-supplements/promethazine-injection-route-intravenous-route/description/drg-20070638 (retrieved on May 5, 2021).

Plaintiff also believes he should have had a spine MRI on March 28, 2016; however, Plaintiff's allegations fail to indicate that he asked Dr. Petry for a spine MRI, that one was recommended by the ER, or that one was warranted when the initial assessment from the ER was that he had a mild concussion.   [Doc. 58] ¶15.   He thus fails to state a constitutional violation.   *See, e.g.*, *McGee v. Corizon*, 831 F. App'x 381, 383–84 (10th Cir. 2020)(McGee contests three month delay to x-ray his neck but he never identifies any individual he spoke to about his need for an x-ray); *Franklin v. Kansas Dep't of Corr.*, 160 F. App'x 730, 735 (10th Cir. 2005)(Franklin stated a claim for the objective claim but failed to do so for the subjective component because "[w]hether a specialist should be consulted is generally considered an exercise of medical judgment that is not subject to redress under the Eighth Amendment."); *White v. Kansas Dep't of Corr.*, 664 F. App'x 734, 740–42 (10th Cir. 2016)(White "raises only the specter of negligent or inadvertent failure to provide medical care, not the deliberate indifference required for purposes of an Eighth Amendment violation" because his own complaint acknowledges he received medical treatment but states his disagreement with the course and speed of such treatment).

Indeed, Plaintiff's Amended Complaint reflects medical staff that were immediately attendant to his needs, assessed his injuries, and sent him to the Emergency Room as a precaution.   [Doc. 59]   He simply disagrees with the prescribed course of treatment that was based upon his initial diagnosis. [*Id.*] ¶15, 19, 20, 22.   In sum, Plaintiff fails to state a plausible claim for deliberate indifference.   *See Shamblin v. Pham*, 221 F.3d 1353 (10th Cir. 2000)(alleged Dr. Pham should have ordered gall bladder removal years before he did;

however, because the plaintiff's complaint showed "he had 'received considerable medical care during his incarceration, including medication, review by nurses, physicians, and a dentist, and laboratory testing'", the complaint failed to state a claim for deliberate indifference). He fails to plausibly state objective or subjective indifference by Dr. Petry, and fails to allege that a serious medical need existed during the timeframe at issue – March 28th to March 29th.   Accordingly, Counts I and II against Dr. Petry should be dismissed pursuant to Rule 12(b)(6).

### C. Even if Plaintiff Stated a Plausible Claim, He Failed to Exhaust Administrative Remedies

#### i. Administrative Exhaustion is a Prerequisite to Plaintiff's Relief

To address the large quantity of prisoner complaints filed in federal court, Congress enacted the Prison Litigation Reform Act ("PLRA"), 110 Stat. 1321-71, as amended, 42 U.S.C. § 1997e *et seq*.   This provision mandates, among other things, early judicial screening of prisoner suits and requires that prisoners exhaust their complaints through the prison grievance system prior to filing a lawsuit.   28 U.S.C. § 1915A; *see also* 42 U.S.C. § 1997e(a).   Pursuant to the Prisoner Litigation Reform Act, "[n]o action shall be brought with respect to prison conditions…by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see also Jones v. Bock*, 549 U.S. 199, 204 (2007)(holding exhaustion is an affirmative defense); *Porter v. Nussle*, 534 U.S. 516, 520, 532 (2002). This exhaustion requirement applies to all inmate suits concerning prison life, whether they involve general circumstances or particular episodes, *Porter*, 534 U.S. at 532; *see also Yousef v. Reno,* 254

F.3d 1214, 1216 (10th Cir. 2001)(PLRA exhaustion applies to *Bivens* claims), and   must

occur unless the process is unavailable due to the actions of prison officials. *Ross v. Blake*,

---U.S.---, 136 S. Ct. 1850, 1856 (2016)(explaining how the administrative process may be

rendered unavailable).

Courts have interpreted this as a "total exhaustion requirement" such that "the

presence of unexhausted claims in [a prisoner]'s complaint require[s][a] district court to

dismiss his action in its entirety without prejudice."   *Ross v. Cty of Bernalillo*, 365 F.3d

1181, 1189 (10th Cir.2004); *Bias v. Cornell Corr., Inc.*, 159 F. App'x 868, 870 (10th Cir.

2005).   To exhaust, a prisoner must "attempt informal resolution of a complaint, and if

that fails, [] submit a formal request for an administrative remedy to the institution."

*Garza v. Davis,* 596 F. 3d 1198, 1204 (10th Cir. 2010)(citing 28 C.F.R. §§ 542.13-14). "If

exhaustion was not completed at the time of filing, dismissal is mandatory."   *Johnson v.

Jones*, 340 F.3d 624, (8th Cir. 2003)(citing *Porter,* 534 U.S. at 524).

And before an issue is considered exhausted, an inmate must properly pursue a

grievance through each step of the grievance process. *See Woodford v. Ngo*, 548 U.S. 81,

88, 90-91 (2006)(discussing exhaustion in the context of 42 U.S.C. § 1997e(a)); *Fields v.

Okla. State Penitentiary*, 511 F.3d 1109, 1112 (10th Cir. 2007); *Eldridge v. Berkebile*, 526

F. App'x 897, 899 (10th Cir. 2013).   "[T]o properly exhaust administrative remedies

prisoners must complete the administrative review process in accordance with the

applicable procedural rules, ---rules that are defined not by the PLRA, but by the prison

grievance process itself." *Jones*, 549 U.S. at 218 (internal quotation marks and citation omitted).

### ii.  BOP Administrative Exhaustion Process

The Bureau of Prisons' three-tiered administrative procedure for inmate grievances is codified at 28 C.F.R. § 542.10 *et seq.*   First, BOP policy requires an inmate to present an issue of concern informally to staff, and staff must attempt to informally resolve the issue before an inmate submits a Request for Administrative Remedy ("BP-9"). 28 C.F.R. § 542.13(a).[13]  Next, if the issue could not be resolved informally, the inmate may obtain submit a Request for Administrative remedy form ("BP-9") to the Warden at the local institutional level. *See* Exh. 2, Grant Decl. ¶6.   If dissatisfied with the Warden's response at the institutional level, the inmate must appeal to the Regional Director in the Regional Office, within 20 days of the Warden's response, and in turn to the Office of the General Counsel, Bureau of Prisons, Washington, D.C., within 30 days of the Regional Director's response. *Id.* at ¶7.

The Regional Administrative Remedy Appeal to the Regional Director is commonly referred to as a "BP-10", and the Central Office Administrative Remedy Appeal to the General Counsel is commonly referred to as a "BP-11".   *Id.*   The Region has 30 days to respond to an appeal and the Central Office has 40 days to respond to an appeal. *Id.* A remedy/ grievance is not deemed exhausted unless it has been properly presented at all

---

[13] Inmates are required to attempt to informally resolve complaints by directly communicating with the staff member involved. *See* Exh. 2, Grant Decl. ¶6.

three levels of the administrative remedy process and the plaintiff's request was denied at all three levels. *Id.* at ¶7, *see also Woodford*, 548 U.S. at 90.

Since July 1, 1990, all administrative remedy submissions from each Bureau of Prisons' institution, region, and Office of the General Counsel have been recorded and maintained in SENTRY, a computer-based information system available at each institution, region, and Central Office.   *Id.* at ¶8.   Any submission from an inmate, whether accepted or rejected at any level, is permanently recorded. *Id.*   These submissions, upon data entry into SENTRY, are given a remedy ID number generated by the SENTRY system, and assigned a suffix of "F1", when submitted at the institutional level.   Upon appeal to the Regional Director, the appeal is assigned the same remedy ID number as that at the institutional level, but the suffix "R1" is assigned.   Similarly, an appeal to the Office of General Counsel is also assigned the same remedy ID number as that at the institutional level, but with the suffix "A1".   If a submission is rejected and later resubmitted after identified deficiencies are corrected, the remedy is affixed with a corresponding "F2", "R2" or "A2", rather than assigned a new remedy ID number.

### iii.   Plaintiff Failed to Exhaust Administrative Remedies

Plaintiff alleges that on April 11, 2018 and April 23, 2018, respectively, BOP denied his grievances for lack of medical care.   [Doc. 58 ¶¶37 & 38] According to SENTRY records, Petitioner has filed 41 Administrative Remedy Requests and Appeals during his incarceration with the BOP.   *See* Exh. 2, Grant Decl. ¶12 & Attach. 2. However, Plaintiff

has never filed an Administrative Remedy Request at the Federal Transfer Center regarding his alleged fall on March 28, 2016, nor has he filed any appeals to the South Central Regional Office or the Office of General Counsel regarding the alleged fall or subsequent treatment at FTC Oklahoma City. *Id.* ¶13.

Plaintiff has exhausted two Administrative Remedy Requests or Appeals: 928154-A1 and 928155-A1; however, neither of these exhausted Administrative Remedy Requests concern the claims regarding events at FTC Oklahoma City or identify Dr. Petry or Nurse Stenmark. [14] *Id.* ¶¶14-16, Attach. 3 & 4.   Administrative Remedy #928154-A1 does mention the alleged fall on March 28, 2016 but the Remedy only makes claims regarding subsequent care at USP Hazelton and USP Big Sandy.   *Id.*, Attach. 3.

Thus, Plaintiff has not exhausted any Administrative Remedy Requests during his incarceration regarding his claim that he fell from an upper bunk at FTC Oklahoma City and was provided inadequate health care while at FTC. *Id.*   Because Plaintiff has not exhausted any Administrative Remedy Request regarding the allegations of events or staff at FTC Oklahoma City, his Amended Complaint should be dismissed. *Id.*   Finally, since Defendants submitted further documentation and exhibits related to documents already referenced in the Amended Complaint[Doc 58] ¶¶16, 18, 27-33, and central to Plaintiff's claim, this Court has sufficient grounds to dismiss pursuant to Rule 12(b)(6). *See Simmat*

---

[14] But *see Jones,* 549 U.S. at 217 (explaining that *per se* a plaintiff need not name/identify each individual, but the level of detail necessary depends on the specific grievance procedures at issue).

*v. U.S. Bureau of Prisons*, 413 F.3d 1225, 1240 (10th Cir. 2005)(failure to exhaust administrative remedies, dismissed for failure to state a claim).

## IV. Dr. Petry is Entitled to Qualified Immunity

The doctrine of qualified immunity "protect[s] officials who are required to exercise their discretion and the related public interest in encouraging the vigorous exercise of official authority." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982). The Supreme Court created the doctrine of qualified immunity to balance the "conflicting concerns" of providing "vindication for constitutional guarantees" against "the risk that fear of personal monetary liability and harassing litigation will unduly inhibit officials in the discharge of their duties." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987) (quoting *Harlow*, 457 U.S. at 814). In rejecting absolute immunity for government officials, the Supreme Court stated that it was not necessary as the qualified immunity defense "provides ample protection to all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986); *see also Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016).

The qualified immunity defense still "gives ample room for mistaken judgments." *Id.* at 343. "This accommodation for reasonable error exists because 'officials should not err always on the side of caution' because they fear being sued." *Hunter v. Bryant*, 502 U.S. 224, 229 (1991) (per curiam) (quoting *Davis v. Scherer*, 468 U.S. 183, 196 (1984)). Whether a defendant is entitled to qualified immunity is a legal question, *Wilder v. Turner,* 490 F.3d 810, 813 (10th Cir. 2007), *cert. denied*, 128 S.Ct. 1229 (2008), and while this defense is typically asserted under a motion for summary judgment, it can also be reviewed

25

in a motion to dismiss. *See Peterson v. Jensen*, 371 F.3d 1199, 1201 (10th Cir. 2004); *see also Choate v. Lemmings*, 294 F. App'x 386, 390-91 (10th Cir. 2008)(explaining that the court should consider whether specific allegations plausibly support a legal claim for relief).

"Qualified immunity [thus] attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Frasier v. Evans*, 992 F.3d 1003, 1014 (10th Cir. 2021) (quoting *City of Escondido v. Emmons*, ––– U.S. ––––, 139 S. Ct. 500, 503, 202 L.Ed.2d 455 (2019) (per curiam). A government official's conduct violates clearly established law if at the time of the challenged conduct, "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right". *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011).

A showing of clearly established law generally does not require a case directly on point, "but existing precedent [nonetheless] must have placed the statutory or constitutional question beyond debate." *Id.* And the Supreme Court has given a recent reminder that "under certain 'extreme circumstances' general constitutional principles established in the caselaw may give reasonable government officials fair warning that their conduct is constitutionally or statutorily unlawful." *Frasier*, 992 F.3d at 1014–15 (citing *Taylor v. Riojas*, ––– U.S. ––––, 141 S. Ct. 52, 53, 208 L.Ed.2d 164 (2020).

When a defendant asserts qualified immunity, a plaintiff must rebut the presumption of immunity by demonstrating: (i) that the defendant's actions violated some constitutional

right; and (ii) that the right was clearly established at the time of the claimed violation. *Cox v. Glanz*, 800 F.3d 1231, 1245 (10th Cir. 2015) (citing *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cirg. 2009)). This is a "heavy two-part burden," and "if the plaintiff fails to satisfy either part of the two-part inquiry, the court must grant the defendant qualified immunity." *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001) (citing *Albright v. Rodriguez*, 51 F.3d 1531, 1534, 1535 (10th Cir. 1995)).

Because a defendant is entitled to qualified immunity if the plaintiff fails to meet either of the two prongs of the analysis, the Court does not need to address both. The Supreme Court has left the decision of whether to address both prongs to the district court, but clearly signals that district courts should hesitate in evaluating both prongs if the case can be resolved solely on "clearly established" grounds. *See District of Columbia v. Wesby*, --- U.S. ----, 138 S.Ct. 577, 589 n. 7 (2018) ("We continue to stress that lower courts 'should think hard, and then think hard again,' before addressing both qualified immunity and the merits of an underlying constitutional claim." (quoting *Camreta v. Greene*, 563 U.S. 692, 707 (2011)).)[15]

---

15 To that end, the Supreme Court has identified **seven** types of cases where the district court "should address only" the clearly established prong of the analysis: (i) where constitutional question is highly fact-intensive; (ii) where a higher court will soon decide the constitutional question; (iii) where the constitutional question requires "an uncertain interpretation of state law"; (iv) where qualified immunity is asserted at the pleading stage; (v) where the constitutional question has not been adequately briefed; (vi) where the defendant easily prevails on the clearly-established prong; and (vii) where it is not clear whether a constitutional right exists at all. *See Kerns v. Bader*, 663 F.3d 1173, 1180-81 (10th Cir. 2011) (quoting *Pearson v. Callahan*, 555 U.S. 223, 236-42 (2009)). By contrast, there are only **two** types of cases where the Supreme Court has suggested a court should address both prongs: (i) where a case involves a recurring fact patterns that requires

27

However, where a plaintiff fails to even state a claim for a constitutional violation, a defendant is entitled to qualified immunity. *See e.g., Davis v. Holder*, No. 12-CV-02122-REB-KMT, 2014 WL 1713429, at *14–15 (D. Colo. Apr. 23, 2014); *Bingham v. Zavaras*, No. 10-CV-00604-DME-CBS, 2011 WL 2610124, at *11 (D. Colo. Apr. 20, 2011), *report and recommendation adopted,* No. 1:10-CV-00604-DME, 2011 WL 2601789 (D. Colo. July 1, 2011).   Even if Plaintiff states a claim for an Eighth Amendment violation, Dr. Petry is entitled to qualified immunity.   *Montoya v. Vigil*, 898 F. 3d 1056, 1068 (10th Cir. 2018).

## <u>CONCLUSION</u>

For the reasons stated above, Plaintiff Amended Complaint [Doc. 58] should be dismissed in its entirety.

> ROBERT J. TROESTER
> Acting United States Attorney
>
> */s/ Rebecca A. Frazier*
> REBECCA A. FRAZIER
> Okla. Bar No. 22285
> Assistant U.S. Attorney
> United States Attorney's Office
> 210 Park Avenue, Suite 400
> Oklahoma City, OK 73102
> (405) 553-8804/8700 - (fax) 553-8885
> Rebecca.Frazier@usdoj.gov

---

guidance on the constitutional question, *Camreta*, 563 U.S. at 706-07; and (ii) where a decision on the clearly-established prong will not resolve all the claims in a case, *Wesby*, 138 S.Ct. at 589 n. 7.

## DESCRIPTION OF EXHIBITS

| 1. | Declaration of CAPT Melissa Hulett |
|----|------------------------------------|
| 2. | Declaration of Melissa Grant with Attachments |

## CERTIFICATE OF SERVICE

___X___   I hereby certify that on May 7, 2021, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing.   Based on the electronic records currently on file, the Clerk of Court will transmit a notice of Electronic Filing to the following ECF registrant(s):

Maria-Vittoria G. Carminati
Alexandra Parrott
NDH LLC
4601 DTC Blvd., Ste. 300
Denver, CO 80237
mvcarminati@ndh-law.com
aparrott@ndh-law.com

John M. Shoreman
McFadden & Shoreman, LLC
1050 Connecticut Ave., Ste. 500
Washington, DC 20036
jmshoreman@verizon.net

Glen Mullins
Durbin, Larimore & Bialick
920 North Harvey
Oklahoma City, OK 73102
gmullins@dlb.net

___X___   I hereby certify that on May 7, 2021, I served the attached document by U.S. Mail on the following, who is not a registered participant of the ECF System: None

/s/ Rebecca A. Frazier
REBECCA A. FRAZIER
Assistant U.S. Attorney