IN THE UNITED STATES DISTRICT
COURT FOR THE WESTERN DISTRICT OF
OKLAHOMA

| | |
|---|---|
| **EDWARD NELLSON,**<br><br>*Plaintiff,*<br><br>v.<br><br>**GEORGE PETRY and THERESA STENMARK,** *in their individual capacities*,<br>Oklahoma City Transfer Center, 7410 S MacArthur Blvd, Oklahoma City, OK 73169,<br><br>*Defendants.* | **Case No. 5:20-cv-00562-F**<br><br>**JURY TRIAL DEMANDED** |

## SECOND AMENDED COMPLAINT FOR MONETARY DAMAGES

Mr. Nellson, a federal prisoner at USP Florence, CO, hereby brings *Bivens* claims against individuals working for the Federal Bureau of Prisons ("BOP"). Mr. Nellson suffered a spinal injury in 2016. Defendants denied Mr. Nellson medical care, including a *wheelchair*, and repeatedly placed him in solitary confinement, without a walker or a wheelchair, to punish him for "not walking." Defendants' actions violated Mr. Nellson's Eighth Amendment Constitutional protections against cruel and unusual punishment.

## INTRODUCTION

Mr. Nellson, a prisoner, fell from his bunk in **March 2016** causing a severe and excruciating spinal injury that went **undiagnosed and untreated for four years**. Over the next two years, Mr. Nellson's condition worsened, leading

Page 1

to paralysis, seizures, and neurological deficits, Finally, on **March 22, 2018**, over two years after he fell, Mr. Nellson received an FMRI of his spine. The MRI showed, **for the first time**, his actual injury: significant damage to his spine. With this newly acquired information about his actual injury, Mr. Nellson realized that Defendants' failure to properly diagnose Mr. Nellson, treat his symptoms, or order him to receive physical therapy over the span of years, caused his injury that was diagnosed on March 22 2018. After March 22, 2018, Mr. Nellson discovered that this injury is now life-threatening. Despite being in intractable pain for four years, and consistently reporting that pain to Defendants, Mr. Nellson was only given pain medication, for the first time, in **October 2018**.

## VENUE & JURISDICTION

1.

The Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1343, 1361 and 5 U.S.C. § 702 et seq, and Fed. R. Civ. P. 65 (injunctive relief), because this claim arises under the US Constitution and federal statutes.

2.

Venue is proper under 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to Mr. Nellson's claims occurred within this District and Division of the United States District for the WESTERN DISTRICT OF OKLAHOMA.

# PARTIES

**I.  Plaintiff**

3.

Plaintiff Edward Nellson is a prisoner at USP Florence, located in Florence, Colorado, in the care & custody of the Federal Bureau of Prisons or the BOP.

**II.  Defendants**

4.

Defendant RN/MXR Theresa Stenmark was the nurse at the BOP Oklahoma City Transfer Center, OK, at the time of Mr. Nellson's injuries. Ms. Stenmark committed the first of what would become continuous violations of Mr. Nellson's Eighth Amendment rights, from 2016 to the present.

5.

Defendant Dr. George Petry, MD/CD, was a BOP physician and Clinical Director at BOP Oklahoma City Transfer Center, OK, at the time of Mr. Nellson's injuries and thereafter. Often, when Mr. Nellson was transferred, he would run back into Dr. Petry, who continued to delay and deny care, making it harder for Mr. Nellson to get care at each new facility. Dr. Petry was instrumental in maintaining the continuity of the violations.

# FACTUAL ALLEGATIONS

**I. <u>Oklahoma City Transfer Center, OK</u>: Mr. Nellson sustains a serious injury to his head and spine while in the care & custody of BOP.**

6.

On March 28, 2016, while a prisoner with the BOP at the Oklahoma City Transfer Center, Mr. Nellson fell out of the top bunk, where he was sleeping, falling approximately 6 feet onto his head. Ex. 1. Mr. Nellson lost consciousness for 5 to 7 minutes. *Id.* He was unable to stand when he re-gained consciousness. *Id.* at 6. He began reporting pain and dizziness immediately.

7.

Mr. Nellson injured his spine when he fell out of his bunk on March 28, 2016, but he would only receive confirmation of this injury on March 22, 2018—two years after his fall and two years during which Defendants repeatedly told Mr. Nellson he was not hurt and it was "all in his head." It is undisputable that Mr. Nellson injured his spine on March 28, 2016.

8.

It is undisputable that as a result of Mr. Nellson's fall, combined with Defendants' negligence and deliberate indifference, Mr. Nellson suffered multiple disk extrusions, cord compression, disk herniation, and a disk bulge. See Ex. 2.

9.

It is undisputable that as a result of Mr. Nellson's spinal injury, he stopped being able to ambulate unassisted as of March 28, 2016, and this inability only got worse with time as a proximate and direct cause of Defendants' conduct.

10.

It is undisputable that as a result of Mr. Nellson's spinal injury, Mr. Nellson began having seizures.

11.

It is undisputable that as a result of Mr. Nellson's spinal injury, Mr. Nellson was in excruciating pain for years.

## II. Identities of Oklahoma City Transfer Center Defendants.

12.

Mr. Nellson brings claims against the following Oklahoma City Transfer Center Defendants: 1) Clinical Director Dr. George Petry; and 2) Nurse Stenmark.

13.

Dr. Petry oversaw Mr. Nellson's treatment and treated Mr. Nellson himself. Dr. Petry reviewed all of Mr. Nellson's records, not only after his injury, but for years thereafter. Consequently, Dr. Petry knew Mr. Nellson had suffered an injury, showed decreasing ability to

walk unassisted and continued to report pain.

14.

Nurse Stenmark treated Mr. Nellson immediately after his fall in March 2018. Nurse Stenmark received Mr. Nellson's complaint of pain. Nurse Stenmark refused to prescribe pain medication to Mr. Nellson; consequently, Mr. Nellson was left in agonizing pain for an extended

period of time.

15.

From the Oklahoma Transfer Center, Mr. Nellson was taken to a medical unit and then sent to the Emergency Room. He was given a CT of the head and was told there was "no bleed." Mr. Nellson did not receive any additional imaging of his head **or of his spine at that time**, and thus as a result of not receiving any MRI on his spine, Mr. Nellson did not obtained a diagnosed spine injury.

16.

As an immediate result of the fall, Mr. Nellson suffered intense pain, he was dizzy, he could not walk, and he felt a tingling sensation in his body. Ex. 1; *see* Ex. 3 at 5 (reporting a pain scale of 8 out of 10). Mr. Nellson relayed his symptoms, including his severe pain, to his healthcare providers, which included Nurse Theresa Stenmark and Dr. Petry, both healthcare providers working for BOP at the Oklahoma City Transfer Center. *Id.*

17.

After relaying his symptoms of severe pains and tingling sensation in his body to Stenmark and Petry, Neither Dr. Petry nor Ms. Stenmark gave Mr. Nellson **pain medication** as a result of his visit to the medical unit on March 28, 2016. Ex. 1; Ex. 3.

18.

After relaying his symptoms of severe pains and tingling sensation in his body to Stenmark and Petry, neither Dr. Petry nor Nurse Stenmark ordered a spine MRI. *Id.* Dr. Petry, having reviewing Mr. Nellson's records, approved and condoned Nurse Stenmark's refusal to give Mr. Nellson pain medication or further investigate his injuries.

19.

Dr. Petry's acts and omissions caused pain and suffering to Mr. Nellson by failing to provide him pain relief for his injuries.

20.

Nurse Stenmark's acts and omissions caused pain and suffering to Mr. Nellson by failing to provide him pain relief for his injuries.

21.

Instead, Dr. Petry and Nurse Stenmark gave Mr. Nellson a wheelchair and placed him on a flight to Atlanta, GA, that same day, March 29, 2016.

22.

Mr. Nellson spent approximately two weeks in Atlanta, GA, during which he continued to report he was in pain, had difficulty standing, and was dizzy. While in the care & custody of the BOP in Atlanta, GA, Mr. Nellson was not provided with pain medication, muscle relaxers, or neurological medication.

23.

Defendants' failure to order an MRI, pain medication, or physical therapy set Mr. Nellson on years of pain and physical deterioration.

24.

Defendants failed to properly diagnose Mr. Nellson with a spinal injury, and they did not otherwise order for him to receive any.

25.

Defendants failed to provide Mr. Nellson any pain medication and they did not otherwise order for him to receive any.

26.

Defendants failed to provide Mr. Nellson any physical therapy and they did not otherwise order for him to receive any.

**III.     Mr. Nellson is finally seen by an outside physician, Dr. Duru, who confirms that: Mr. Nellson cannot walk, Mr. Nellson needs pain medication, Mr. Nellson needs physical therapy, and Mr. Nellson needs a spine MRI.**

27.

In October 2017, after over a year of agony, Mr. Nellson was taken to West Virginia University to see a neurologist. Ex. 4. Mr. Nellson was seen by Dr. Uzoma Bruno Duru. *Id.*

28.

Dr. Duru noted that Mr. Nellson's Chief Complaints were:

- Seizures
- Balance Problems
- Headache
- Involuntary Movements
- Memory Problems
- Muscle Spasm
- Speech Disturbance
- Lack of Concentration
- Jaw Pain

Ex. 4 at 1.

29.

Dr. Duru, under "Gait," noted: "unable to stand on his own, needs assistance or walker to attempt to ambulate." Ex. 4 at 4.

30.

Dr. Duru stated Mr. Nellson needed an MRI Brain with and without contrast to explain the seizures. *Id.* at 5.

31.

Dr. Duru recommended that Mr. Nellson begin receiving Keppra 1000 mg BID. *Id.*

32.

Dr. Duru recommended that, <u>because of Mr. Nellson's inability to walk</u>, **he receive a spine MRI in addition to the brain MRI.** *Id.*

33.

Dr. Duru also recommended Mr. Nellson receive physical therapy following the MRIs. *Id.*

34.

On March 8, 2018, Mr. Nellson filed two more grievances. He specifically stated that he had yet to see a neurologist, that he remained undiagnosed, and that he only began seeing a therapist two years after his injury. Ex. 5 and 30. As discussed below, both grievances were eventually denied. Ex. 6 and 7.

**IV. Mr. Nellson is <u>finally</u> given a spine MRI and he *does*, in fact, have a severe back injury, which Mr. Nellson had suspected for two years, and Defendants failed to identify, diagnoses, treat, or address, thereby delaying diagnosis and treatment.**

35.

On March 22, 2018, over two years after his injury, Mr. Nellson received an MRI of his spine. Ex. 2. The MRI showed significant damage to his spine. *Id.* Specifically, the MRI of the spine showed the following:

- C4-C5: A 2-3 mm central disk extrusion extending 9 mm superiorly and inferiorly from the intervertebral disk space with mild cord compression;

- C5-C6: A 2-3 mm central/left paracentral disk herniation/osteophyte complex with mild compression of the anterolateral spinal cord resulting in moderate left neural foraminal stenosis. Mild right neural foraminal stenosis due to osteophyte/disk complex. Mild superimposed broad based disk bulge. Mild loss of disk height; and

- C6-C7: A 2 mm central disk herniation with mild effacement of ventral sac.

Ex. 2.

36.

Upon receiving this MRI, Mr. Nellson discovered the injury that he could never medically confirm because of Defendants' conduct. He discovered that their lack of care had only allowed his injury to progress and that he had, in fact, injured his spine in March 2016. He discovered that his various symptoms, which Defendants had not treated, were attributable to his spinal injury, which they had failed to diagnose. Mr. Nellson later discovered that this injury, which had been allowed to degenerate and progress, is now life-threatening. The progression and degeneration were caused by Defendants and was only discovered in March 2018.

37.

On April 11, 2018, BOP denied Mr. Nellson's appeal of the denial of yet another grievance by Mr. Nellson for lack of medical care, failure to provide him with a neurology consultation, and falsification of his records. Ex. 6 (denying Mr. Nellson's appeal).

38.

On April 23, 2018, BOP denied Mr. Nellson's appeal of the denial of yet another grievance by Mr. Nellson for lack of medical care, specifically the fact that Mr. Nellson was kept "locked up" without walker or wheelchair. Ex. 7 (denying Mr. Nellson's appeal).

39.

In May 2018, Mr. Nellson grieved that he was not receiving medical care at the appropriate standard, requested a transfer to an FMC, and asked that staff be disciplined. Ex. 8.

### III. Multiple Locations: Mr. Nellson was transferred to numerous different locations where he received little to no medical care, despite repeated requests and a diagnosed need for such care.

40.

From June 2018 through May 2019, Mr. Nellson was shuttled through various federal facilities, including some located in Oklahoma, Florida, back to Oklahoma, Florida again, and California.

41.

Upon information and belief, Dr. Petry—at the Oklahoma Transfer Center—interfered every time Mr. Nellson came into his care during his transfers.

42.

During his first stay in Oklahoma Mr. Nellson was given pain medication, Tylenol 3, for the first time. This was the first time he received pain medication despite experiencing and reporting pain since March 2016.

43.

Starting in November 2017, and certainly by October 2018, BOP's records reflect that Mr. Nellson had Parkinson disease, that he was unable to ambulate 10 feet without a walker, and that he had recently fallen dislocating his shoulder. This latest injury, among others, was a result of the denial and delay of medical care described above.

44.

On April 3, 2019, FNP-C Bogdanovic again saw Mr. Nellson. Ex. 9. FNP-C Bogdanovic noted that the spine MRI "reveals extensive abnormal results from C4-C7 with stenosis of the spinal cord and herniated disc and osteophytes causing chronic pain in the upper, mid, and lower back that has been properly managed." Ex. 10 at 3.

45.

This appropriate diagnosis should lay to rest any previous denials, misrepresentations, confabulations, and fabrications by the various individual Defendants who sought to deny the real, painful, debilitating, and life-threatening injuries Mr. Nellson suffered in March 2016. They also repeatedly reiterate the damage Mr. Nellson suffered as a result of Defendants' tortious acts and omissions towards Mr. Nellson.

46.

Had Mr. Nellson received pain medication sooner, he would have avoided years of suffering.

47.

Had Mr. Nellson received a spine MRI sooner, the correct diagnosis would have been reached sooner.

48.

Mr. Nellson had access to none of the care described above for years because of individual Defendants' deliberate indifference to his suffering and/or medical malpractice which had serious and permanent detrimental effects on his health.

49.

Upon information and belief, Dr. Petry did not prescribe pain medication to Mr. Nellson and obstructed Mr. Nellson's ability to transfer to an institution with the appropriate Care Level every time he was able to over the next four years. Dr. Petry's actions showed deliberate

indifference and were negligent.

50.

Upon information and belief, every time Mr. Nellson transferred institution his file was received by Dr. Petry.

51.

Upon information and belief, every time Dr. Petry could he interfered with Mr. Nellson's ability to go to an FMC or a Level 4 institution.

52.

Mr. Nellson has repeatedly filed grievances regarding BOP's failure to provide him medical care and failure to address his spinal injury. Most recently, Mr. Nellson filed a grievance in the late Summer of 2020. The BOP failed to reply to his claim and then, after the deadline for replying expired, gave itself an extension to respond. On September 19, 2020, the BOP again failed to address his complaint. Unsurprisingly, they denied his grievance once again. Mr. Nellson, therefore, has exhausted his administrative remedies—again.

## CAUSES OF ACTION

**COUNT I**
**BIVENS- VIOLATION OF EIGHTH AMENDMENT, INCLUDING CRUEL AND UNUSUAL PUNISHMENT AND FAILURE TO PROVE ADEQUATE MEDICAL TREATMENT**
*(Against all Defendants in their individual capacity)*

53.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

54.

Based on the incorporated facts to support this count, the named Defendants violated Mr. Nellson's Eight Amendment Rights because they both knew and appreciated the harms posed to Mr. Nellson yet took no reasonable steps to mitigate those harms. Consequently, Mr. Nellson suffered extreme pain and suffering. Based on Defendants' conduct, Mr. Nellson is entitled to all damages permitted by law, including special damages in the amount equal to any monies he had to pay for treatment of his various illnesses discussed throughout this Complaint, punitive damages, and attorney's fees.

## COUNT II
## *BIVENS* CLAIM: SUPERVISORY CAPACITY
*(Against Clinical Director Petry, in his individual capacity)*

55.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

56.

A *Bivens* cause of action is a judicially created counterpart to 42 U.S.C. § 1983 for claims against federal officers.

57.

Defendant Clinical Director Petry is a "Supervisory Defendant."

58.

Based on the facts incorporated to support this Count, Defendant Petry was a healthcare supervisory official who condoned and ratified the conduct of Defendants identified above and engaged in denial and delay of medical care in their individual capacities. To this extent Defendant Petry personally participated in the decision accounted for in this Complaint, based on the facts incorporated to support this Count. Based on Defendant Petry's conduct, Mr. Nellson is entitled to all damages permitted by law, including special damages in the amount equal to any monies he had to pay for treatment of his various illnesses discussed throughout this Complaint, punitive damages, and attorney's fees.

**COUNT III**
**MEDICAL MALPRACTICE – NEGLIGENCE**
*(Against George Petry, MD)*

59.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

60.

Defendant Petry is healthcare professional employed by BOP at all relevant times. Defendant Petry was Mr. Nellson's treating physician and therefore, Defendant Petry had a duty

of care to Mr. Nellson.

61.

Defendant Petry's acts, and omissions fell under his applicable standard of care. By doing so, Defendant Petry breached his duties to Mr. Nellson.

62.

Defendant Petry's breaches were the actual and legal causes of Mr. Nellson's injuries.

63.

Defendant Petry's breaches resulted in damages to Mr. Nellson.

**COUNT IV**
**MEDICAL MALPRACTICE – GROSS NEGLIGENCE**
*(Against George Petry)*

64.

Plaintiff repeats and incorporates by reference each and every allegation contained in paragraphs 1 through 52 as if fully set forth herein.

65.

Defendant Petry is healthcare professional employed by BOP at all relevant times. Defendant Petry was Mr. Nellson's treating physician and therefore, Defendant Petry had a duty

of care to Mr. Nellson.

66.

Defendant Petry's acts, and omissions fell under his applicable standard of care. By doing so, Defendant Petry breached his duties to Mr. Nellson.

67.

Defendant Petry demonstrated a willful indifference to Mr. Nellson's safety, thereby behaving with gross negligence.

68.

Defendant Petry's breaches were the actual and legal causes of Mr. Nellson's injuries.

69.

Defendant Petry's breaches resulted in damages to Mr. Nellson.

## JURY REQUEST

Mr. Nellson asks that his case be tried to a jury of his peers.

## PRAYER FOR RELIEF

Mr. Nellson respectfully asks that his Court find in his favor and award:

1) Actual damages in an amount of no less than $ 100,000,000;

2) Special damages;

3) Attorney's fees and costs, as permitted by statute;

4) Punitive damages.

Dated June 2, 2022.

Respectfully Submitted,

*/s/ Dallas LePierre*
Dallas LePierre
HDR, LLC
44 Broad Street NW, Suite 200
Atlanta, GA 30303
404-254-0442 / 404-577-0080 FAX
dlepierre@hdrattorneys.com
*Pro Hac Vice*